Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**
Nov 19 2014, 10:18 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana
Indianapolis, Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**ABIGAIL R. MILLER**
Certified Legal Intern
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF PARENT-CHILD RELATIONSHIP OF A.R. (Minor Child), | ) ) ) ) | |
| and | ) ) | |
| M.R. (Mother) | ) ) | |
| Appellant, | ) ) | No. 49A02-1404-JT-227 |
| vs. | ) ) ) | |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF MARION COUNTY
The Honorable Marilyn Moores, Judge
The Honorable Larry J. Bradley, Magistrate
Cause No. 49D09-1308-JT-16149

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

M.R.'s ("Mother") parental rights to her minor child, A.R., were terminated in Marion Superior Court. Mother appeals and argues that termination of her parental rights is not supported by sufficient evidence.

We affirm.

**Facts and Procedural History**

Mother has four children, and on the date of the termination hearing, was pregnant with her fifth child. Two children reside with their fathers. The other two children, K.H. and A.R., were adjudicated children in need of services ("CHINS") in 2011.[1] A.R., the minor child at issue in this appeal, was born on October 24, 2009.

In June 2011, Mother, who was incarcerated,[2] placed A.R. with a family friend. When the friend was no longer able to care for A.R., she contacted Department of Child Services ("DCS"). DCS filed a CHINS petition and Mother admitted that A.R. was a CHINS. Mother was ordered to participate in certain services, including home based counseling, and A.R. was eventually returned to Mother's care. On May 22, 2012, over DCS's objection, the court closed A.R.'s CHINS case.

---

[1] On the date of the termination hearing concerning A.R., the CHINS proceeding with regard to K.H. remained pending.

[2] Mother was convicted of theft on April 12, 2011, and placed on house arrest.

On July 6, 2012, DCS again removed A.R. from Mother's care and filed another CHINS petition alleging that Mother was not providing a safe, stable, and appropriate living environment for A.R. Specifically, Mother had violated her probation and was "on the run" because there was a warrant for her arrest. Tr. p. 11. A.R. was again adjudicated a CHINS and placed in therapeutic foster care.

Mother failed to appear in the CHINS proceedings for over six months, but finally appeared at a periodic review hearing held on February 26, 2013. Mother personally appeared at this hearing and admitted that she failed to appear in court because of the warrant for her arrest. The court refused to authorize visits between A.R. and Mother until Mother demonstrated consistent participation in services. The court also ordered Mother to stay in contact with her DCS family case manager.

Mother failed to stay in contact with her family case manager and failed to participate in services. In June 2013, Mother informed DCS that she had been incarcerated for violating her probation from February 27 to June 6, 2013. After contact with Mother was reestablished, the DCS gave Mother referrals for a substance abuse assessment, random drug screens, home-based therapy, and home-based case management.

Mother completed one random drug screen in July 2013, which was positive for marijuana and benzodiazepines. Mother also completed a substance abuse assessment but failed to disclose her positive drug screen or her abuse of prescription pain medication. When Mother's chemical dependency counselor obtained that information, she recommended intensive outpatient treatment for Mother. Mother failed to participate

3

in the recommended treatment. Mother also met with her home-based counselor, but Mother's participation was sporadic. Therefore, in November 2013, Mother was discharged from home-based counseling services for noncompliance. Mother has not seen A.R. since July 2012, and because Mother never consistently participated in court-ordered services, she was never granted visitation with A.R.

In August 2013, DCS filed a petition to involuntarily terminate Mother's parental rights to A.R. and the termination hearing was held on February 26, 2014. Mother was unemployed and pregnant with her fifth child on the date of the termination hearing. Mother planned to give the baby up for adoption. At the hearing, she testified that her failure to maintain contact with DCS and participate in court-ordered services was due to her incarceration, her prescription drug abuse, and an abusive relationship. Mother stated that after she ended the abusive relationship, she temporarily resided at the Julian Center until she moved into her cousin's home. Mother requested more time to complete services. Mother's service providers and the family case manager believed that Mother had been given enough time to complete services and that termination of her parental rights was in A.R.'s best interests. Tr. pp. 46-47, 57.

Mother's parental rights to A.R. were terminated on March 6, 2014. The trial court concluded in pertinent part:

> 27. There is a reasonable probability that the conditions that resulted in [A.R.'s] removal and continued placement outside the home will not be remedied by her mother. [Mother] has not taken advantage of opportunities provided to remedy conditions and has not made the progress needed to believe she would follow through successfully with services in the future.

4

28. Continuation of the parent-child relationship poses a threat to [A.R.'s] well-being in that it would pose as a barrier in obtaining permanency for her through an adoption when [Mother] has not seen her since before the case started due to her lack of engagement in services. Further, without adequately addressing issues of instability and addiction, [Mother] would not be able to provide a safe and stable environment for [A.R.] if she were placed in her mother's care, or provide for her needs.

29. Termination of the parent-child relationship is in the best interests of [A.R.]. Termination would allow for her to be adopted into a stable and permanent home where her needs will be safely met.

Appellant's App. p. 15. Mother appeals the termination of her parental rights to A.R.

**Standard of Review**

We have long had a highly deferential standard of review in cases involving the termination of parental rights. In re D.B., 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). Our supreme court recently observed:

> Decisions to terminate parental rights are among the most difficult our trial courts are called upon to make. They are also among the most fact-sensitive –so we review them with great deference to the trial courts, recognizing their superior vantage point for weighing the evidence and assessing witness credibility. Because a case that seems close on a "dry record" may have been much more clear-cut in person, we must be careful not to substitute our judgment for the trial court when reviewing the sufficiency of the evidence.

In re E.M., 4 N.E.3d 636, 640 (Ind. 2014).

Consequently, we neither reweigh the evidence nor assess witness credibility. In re D.B., 942 N.E.2d at 871. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Id. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. Id. In deference to the trial court's unique position to assess the

5

evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. Id. Clear error is that which "leaves us with a definite and firm conviction that a mistake has been made." J.M. v. Marion Cnty. Office of Family & Children, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), trans. denied.

**Discussion and Decision**

"The purpose of terminating parental rights is not to punish parents but to protect their children. Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents." In re S.P.H., 806 N.E.2d 874, 880 (Ind. Ct. App. 2004) (citation omitted). Indeed, parental interests "must be subordinated to the child's interests" in determining the proper disposition of a petition to terminate parental rights. In re G.Y., 904 N.E.2d 1257, 1260 (Ind. 2009).

Indiana Code section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:

> (2) The petition must allege:
> (B) that one (1) of the following is true:
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) that termination is in the best interests of the child; and
> (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove "each and every element" by clear and convincing evidence. G.Y., 904 N.E.2d at 1261; Ind. Code § 31-37-14-2. Clear and convincing evidence need

6

not establish that the continued custody of the parent is wholly inadequate for the child's very survival. Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). Rather, it is sufficient to show by clear and convincing evidence that the child's emotional development and physical development are put at risk by the parent's custody. Id. If the court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

Mother argues that the evidence was insufficient to prove that 1) there is a reasonable probability that the conditions that resulted in A.R.'s removal or the reasons for placement outside of Mother's home will not be remedied, and 2) there is a reasonable probability that the continuation of the parent-child relationship poses a threat to A.R.'s well-being. The trial court found sufficient evidence to support a conclusion as to both allegations. Because the termination statute is written in the disjunctive, the DCS was only required to prove one or the other, but not both. See Bester v. Lake County Office of Family & Children, 839 N.E.2d 143, 148 n.5 (Ind. 2005). We conclude that the DCS presented sufficient evidence that continuation of the parent-child relationship poses a threat to the well-being of the child; therefore, we need not address whether the DCS proved that there was a reasonable probability that the conditions leading to A.R.'s removal from Mother's home would not be remedied.[3] See id.

"In determining whether the continuation of a parent-child relationship poses a threat to the child[], a trial court should consider a parent's habitual pattern of conduct to

---

[3] Mother does not challenge the trial court's conclusion that termination of her parental rights is in A.R.'s best interests.

determine whether there is a substantial probability of future neglect or deprivation." In re A.P., 981 N.E.2d 75, 81 (Ind. Ct. App. 2012). Courts must also judge a parent's fitness to care for her child as of the time of the termination hearing, taking into consideration any evidence of changed conditions. Id. Courts may consider any services offered by the DCS and a parent's response to those services. In re J.C., 994 N.E.2d 278, 287 (Ind. Ct. App. 2013). "Additionally, in evaluating a parent's habitual pattern of conduct, courts have properly considered, among other things, evidence of a parent's prior drug and alcohol abuse, history of neglect, and failure to provide financial support." A.J. v. Marion County Office of Family & Children, 881 N.E.2d 706, 717 (Ind. Ct. App. 2008), trans. denied.

Mother has not seen A.R. since July 2012, when she left A.R. with a family friend because she was "running from the law" after violating her probation. Mother finally disclosed her whereabouts to DCS over six months after the CHINS petition was filed. Mother was offered services by DCS but her participation in those services was erratic and she failed to complete the services offered. For that reason, Mother was not allowed to have visitation with A.R. during the CHINS and termination proceedings.

Mother admitted that she abuses prescription pain medication, but she failed to address her substance abuse issues when she was offered substance abuse counseling. Tr. pp. 22, 52. Mother also failed to remain in contact with her family case manager throughout these proceedings and Mother was discharged from home based counseling services for noncompliance. Mother has not demonstrated a sincere effort to engage in

8

services and has not shown that she is capable of providing permanency and stability for A.R.

Mother was incarcerated for several months during the CHINS proceedings and was also in an abusive relationship. Therefore, she requested more time to complete the services offered by DCS with the goal of being reunified with A.R. The family case manager and other DCS service providers believed that Mother had been given enough time to complete services. They testified that A.R. was doing well in her foster home, A.R.'s foster home is pre-adoptive, and that A.R. needs permanency. Tr. pp. 46-47, 56-57.

Children "have a paramount need for permanency, which we have called 'a central consideration in determining the child's best interests.'" In re E.M., 4 N.E.3d at 647-48 (quoting K.T.K. v. Indiana Dep't of Child Servs., 989 N.E.2d 1225, 1235 (Ind. 2013)). "Simply stated, children cannot wait indefinitely for their parents to work toward preservation or reunification—and courts 'need not wait until the child is irreversibly harmed such that the child's physical, mental and social development is permanently impaired before terminating the parent-child relationship.'" Id. (quoting K.T.K., 989 N.E.2d at 1235).

We conclude that DCS presented sufficient evidence that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to A.R.'s well-being. DCS proved that Mother historically failed to provide A.R. with a permanent and stable home and that she lacked the ability to do so throughout these proceedings. Importantly, Mother also failed to make a sincere effort to participate in court-ordered

9

services, and for that reason, she has not had any contact with A.R. since she abandoned her in July 2012. For all of these reasons, we affirm the trial court's judgment terminating Mother's parental rights to A.R.

Affirmed.

RILEY, J., and CRONE, J., concur.